OPINION *Page 2 
{¶ 1} Plaintiff-Appellant Kimberly Meyer ("Wife") appeals the October 27, 2006 Judgment Entry/Decree of Divorce entered by the Licking County Court of Common Pleas, Domestic Relations Division, which divided the parties' marital assets and debts, awarded spousal support, denied child support, and recalculated temporary orders. Defendant-appellee is Randall Meyer ("Husband").[1]
 STATEMENT OF THE FACTS AND CASE {¶ 2} Husband and Wife were married on March 26, 1983, in Columbus, Ohio. Three children were born as issue of said union, to wit: Randall, Jr. (DOB 4/16/87)[2]; Megan (DOB 1/19/89); and Samantha (DOB 6/15/91). On July 22, 2004, Wife filed a Complaint for Divorce in the Licking County Court of Common Pleas, Domestic Relations Division. Husband filed an Answer and Counter-Claim for Divorce. The trial court issued temporary orders.
 {¶ 3} The matter came on for final hearing on May 18, May 19, and June 21, 2006. Prior to the commencement of the hearing on May 18, 2006, the parties advised the court they had entered into seven stipulations relative to the date and duration of the marriage; the children; the trial court's jurisdiction; the grounds upon which the divorce should be granted; the sale of marital real property; and each parties' residential parent status. Husband and Wife then presented evidence as to the remaining issues.
 {¶ 4} In the mid-to-late 1980s, Husband started his own company, Randy Meyer Masonry, Inc. Husband and Wife were equal shareholders in the business. Wife worked as the receptionist for the company and also handled the payroll. Pursuant to *Page 3 
their accountant's advice, Wife was paid $400/week. Wife stopped working briefly during her pregnancy with Randall, Jr. Around this time, the parties purchased the marital residence located at Windy Hollow Road, Johstown, Licking County, Ohio. The parties subsequently purchased 110+ acres of real property in Muskingum County, Ohio, which they improved with a pole barn and other structures. Randy Meyer Masonry was the parties' primary source of income.
 {¶ 5} In 2001, with monies Husband received as an inheritance from his mother's estate, the parties purchased real property and built a residence at 7031 Stanhope Place, in University Park, Florida. The home is located in a gated country club community. In February, 2004, the parties made a trial move from Licking County, Ohio, to the Stanhope property in Florida. They planned to operate and maintain Randy Meyer Masonry in Ohio, and hoped to acquire another business interest in Florida. In anticipation of such acquisition, the parties obtained a home equity loan on the Licking County property in the amount of $350,000. Husband and a Florida neighbor, Stephen Wolfson, subsequently purchased a tree business, Ultimate Tree. Husband withdrew $275,000 from the home equity line to purchase his share of the business. Wife had no involvement in this business arrangement. With the money the tree business generated, Husband and Wife were able to pay off a significant amount of debt they had incurred, and were able to meet monthly expenses. Wife returned to Ohio, in the summer of 2004.
 {¶ 6} As the result of a number of accidents, including an employee stealing a company truck and totaling the vehicle, and a tree falling on an employee, which caused the liability and Workers' Compensation insurance rates to increase dramatically, *Page 4 
Ultimate Tree failed. On or about September 1, 2005, Husband moved to Daytona Beach, where he became employed as a superintendent for a utility and pipe company, earning a salary of $1000/week. Husband quit this job after approximately one month as he was working 60 hours each week and was not receiving benefits. With permission from the trial court, the parties auctioned the assets of Randy Meyer Masonry. The proceeds were subsequently delivered to each party.
 {¶ 7} According to Wife, during the pendency of the matter, Husband disposed of a number of assets, which should have been subject to division. Those items were a 2000 Pontiac Bonneville, for which Husband received $10,000; all or substantially all of the household goods, furniture, furnishings and appliances from the Stanhope residence, for which he received approximately $12,000; equity accrued from life insurance in the amount of $63,203.61; and a 1988 Mercedes Convertible as a trade-in for another vehicle ($10,000).
 {¶ 8} Husband conceded he sold the Pontiac, but noted he used the money to pay bills. With respect to the household goods, furniture, furnishings and appliances from the Stanhope property, Husband stated the parties originally intended to sell the house and contents together, however, two weeks before closing, the buyers decided they did not want the contents. Husband contacted Wife about her buying the furniture because moving or storing such would be cost prohibited. Wife did not want to purchase the furniture; therefore, he had no choice but to sell the contents. Husband acknowledged he withdrew money from his life insurance, but explained such was done in order to pay the parties' debts, the mortgage on the Stanhope property, the utilities on all three properties, and car and health insurance premiums. As for Ultimate Tree, *Page 5 
Husband testified there were no assets left to be split between him and Wolfson, and he believed all of the debts had been resolved.
 {¶ 9} Wife is 43 years old. She completed the 11th
grade of high school, but did not graduate or earn a GED. As stated, supra, Wife worked for Randy Meyer Masonry as an office worker, and never earned more than $400/week. Wife's 2004 Form 1040 indicates she earned $16,524 that year. Husband is 47 years of age and a high school graduate. The 2002 tax returns for Randy Meyer Masonry listed $334,678 as the gross receipts of the business. The gross receipts were one half of that amount on the 2003 tax returns. The parties' accountant testified Husband had the potential to earn $52,000/year. The parties contributed almost equally to separate retirement funds.
 {¶ 10} On the morning of the last day of trial, Wife requested the trial court interview Samantha, and designate Wife as the girl's residential parent and legal custodian. Wife argued a change of circumstances had taken place as Samantha had returned to Ohio from Florida after completing the school year, and was living with Wife The trial court declined Wife's request. Wife filed a motion for reconsideration, which the trial court denied.
 {¶ 11} The trial court issued its Judgment Entry/Decree of Divorce on October 27, 2006. It is from this entry Wife appeal, raising the following assignments of error:
 {¶ 12} "I. THE TRIAL COURT ERRED IN REFUSING TO INTERVIEW THE PARTIES' MINOR DAUGHTER UPON THE MOTION OF PLAINTIFF-APPELLANT.
 {¶ 13} "II. THE TRIAL COURT ERRED IN FINDING THAT PAYMENT OF CHILD SUPPORT BY APPELLEE TO APPELLANT WOULD BE UNJUST, INAPPROPRIATE AND NOT IN THE CHILDREN'S BEST INTEREST. *Page 6 
 {¶ 14} "III. THE TRIAL COURT ERRED IN ORDERING THAT PROFIT PROCEEDS, ASSETS, AND DEBTS OF ULTIMATE TREE BE SPLIT EQUALLY BETWEEN THE PARTIES.
 {¶ 15} "IV. THE TRIAL COURT IN ORDERING THAT THE NET PROCEEDS FROM THE SALE OF THE MARITAL REAL ESTATE BY DIVIDED EQUALLY WHEN APPELLEE CONVERTED $275,000 OF THE EQUITY FOR HIS OWN USE IN INVESTING IN A BUSINESS WITHOUT APPELLANT'S AGREEMENT.
 {¶ 16} "V. THE TRIAL COURT ERRED IN ORDERING THE TEMPORARY ORDERS CHILD SUPPORT BE RECALCULATED RETROACTIVELY IMPUTING ANNUAL INCOME TO APPELLANT OF $25,000 AND TO APPELLEE OF $50,000.
 {¶ 17} "VI. THE TRIAL COURT ERRED IN FAILING TO CREDIT APPELLANT WITH ONE-HALF THE VALUE OF THE MARITAL ASSETS APPELLEE CONVERTED TO HIS OWN USE IN DIRECT VIOLATION OF THE TRIAL COURT'S RESTRAINING ORDER."
 I {¶ 18} In her first assignment of error, Wife maintains the trial court erred in refusing to interview the parties' minor daughter.
 {¶ 19} R.C. 3109.04(B)(1) reads:
 {¶ 20} "(B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental *Page 7 
rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation."
 {¶ 21} We find Wife's request the trial court to interview Samantha was, in essence, a motion to withdraw the parties' prior stipulation; therefore, R.C. 3109.04(B)(1) is inapplicable.
 {¶ 22} "[A] stipulation is a voluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate the need for proof or to narrow the range of litigable issues."Julian v. Creekside Health Center, 7th Dist. No. 03MA21, (Citations omitted). "Ohio courts have long recognized the validity of stipulations." Albertso v. Ryder (Jun. 30, 1992), 11th Dist. No. 91-L-103, unreported, citing Garrett v. Hanshue (1895), 53 Ohio St. 482,495, 42 N.E.2d 256. Stipulations waive the necessity to produce evidence or the authentication of evidence. 89 Ohio Jurisprudence 3d (1989) 114, 115, Trial, Section 77. A stipulation which is filed with and accepted by the court is binding on the parties and "is a fact deemed adjudicated for purposes of determining the remaining issues in the case."Albertso, supra at ¶ 54 (Citation omitted). "A party who has agreed to a stipulation cannot unilaterally retract or withdraw from it." Id. (Citation omitted). A stipulation may only be withdrawn with the other party's consent or "by leave of court upon good cause." Id. (Citation omitted). In determining whether a party may withdraw a stipulation, the court has broad discretion. Id. (Citations omitted). An abuse of discretion connotes more than an error of law or *Page 8 
judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 23} The basis of Wife's argument is, although the parties had come to a stipulation regarding custody of their daughters, the circumstances had changed significantly between the first day of trial, May 18, 2006, and the final day, June 21, 2006. Wife explains Samantha returned to Ohio upon the completion of the school year, and was currently living with her (Wife), and Husband moved from Florida to Arizona. Husband moved to Arizona during the trial.
 {¶ 24} We find the trial court did not abuse its discretion in denying Wife's motion. Wife made her request on the third day of trial after the trial court had heard two full days of testimony, none of which dealt with the issue of custody. Husband did not receive prior notice of the motion and objected to the request. Further, the matter had been pending for approximately two years. The issue can be addressed via a post-decree motion to change the allocation of parental rights.
 {¶ 25} Based upon the foregoing, we overrule Wife's first assignment of error.
 II {¶ 26} In her second assignment of error, Wife argues the trial court erred in finding an award of child support would be unjust, inappropriate, or not in the children's best interest.
 {¶ 27} In Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, the Ohio Supreme Court determined the abuse of discretion standard is the appropriate standard of review in matters concerning child support. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable *Page 9 
and not merely an error of law or judgment. Blakemore, supra at 219. Furthermore, as an appellate court, we are not the trier of facts. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. Cross Truckv. Jeffries (February 10, 1982), Stark App. No. CA-5758, 1982 WL 2911. Accordingly, a judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 28} In its October 27, 2006 Judgment Entry/Decree of Divorce, the trial court imputed income to Husband in the amount of $50,000/year, and to Wife in the amount of $25,000/year. The trial court declined to award child support, noting each party is the residential parent of one child and contributing to the expense of the respective child, and Husband and Wife "will have approximately similar incomes" and will incur significant travel expenses for visitation.
 {¶ 29} The record reveals Wife earned approximately $400/week while working for Randy Meyer Masonry. The parties' accountant testified Husband was capable of earning $52,000/year, and Wife was capable of earning $25,000/year. The trial court award Wife spousal support in the amount of $1,000/month, and ordered Husband to pay a lump sum distribution as and for spousal support in the amount of $65,000. By receiving spousal support, Wife's income will increase to $37,000/year. In paying spousal support, Husband's income will be reduced to $38,000.[3] Accordingly, the *Page 10 
parties' incomes will be "approximately similar". We find the trial court did not abuse its discretion in not awarding child support for the reasons it stated.
 {¶ 30} Wife's second assignment of error is overruled.
 III, IV {¶ 31} Because Wife's third and fourth assignments of error are interrelated, we shall address said assignments of error together. In her third assignment of error, Wife asserts the trial court erred in ordering the profit proceeds, assets, and debts of Ultimate Tree be split equally between the parties. In her fourth assignment of error, Wife submits the trial court abused its discretion in ordering the net proceeds from the sale of the marital real estate be divided equally as Husband converted $275,000 of the equity for his own use in investing in Ultimate Tree without Wife's agreement.
 {¶ 32} The standard for appellate review of a domestic relations court's division of assets and debts is the abuse of discretion standard. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore, supra at 219. Further, and again as with assets, in allocating debts between the parties "the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 97, 518 N.E.2d 1197.
 {¶ 33} The trial court found Ultimate Tree to be a marital joint venture, and Wife enjoyed the profits of the business during the marriage. The trial court considered Wife's disavowal of the business the result of hindsight knowledge. The trial court ordered Husband to complete the termination of the entity within one calendar year, and *Page 11 
his failure to do so would result in his becoming solely responsible for any outstanding debt or obligation.
 {¶ 34} Wife cites Eddy v. Eddy (Aug. 14, 2002), Washington App. No. 01CA20, unreported, in which the Fourth District Court of Appeals found the trial court abused it discretion in equally dividing the debt from an equity line. In Eddy, the husband and wife jointly established a home equity line of credit. However, the wife had no knowledge of the husband's withdrawal of $26,000 to start a business.
 {¶ 35} We find Eddy to be distinguishable from the instant case. Herein, Wife agreed to establish the home equity line and cooperated in that procedure. Wife knew the money from the home equity would be used to start a new business in Florida, and knew Husband withdrew the funds to purchase his share of the business. Although Wife may not have had a say in what business Husband finally decided to purchase, Wife enjoyed the profits and benefited from the business. The fact the business ultimately failed does not render the trial court's division of the profits and losses an abuse of discretion.
 {¶ 36} Wife's third and fourth assignments of error are overruled.
 V {¶ 37} In her fifth assignment of error, Wife asserts the trial court erred in retroactively recalculating the temporary order of child support, utilizing the income amounts it imputed to each party. This assignment of error involves child support Husband failed to pay while both girls lived with Wife for a period of 5 ½ months. The support monies were held in trust. *Page 12 
 {¶ 38} We note modification of a child support order may, generally, be retroactively applied to the date such modifications were first requested; in other words, normally to the date the motion for modification was filed. Also, this retroactivity determination is left to the sound discretion of the trial court. State ex rel. Draiss v.Draiss (1990), 70 Ohio App.3d 418, 421; Tobens v. Brill (1993),89 Ohio App.3d 298, 304; Oatey v. Oatey (Apr. 25, 1996), Cuyahoga App. Nos. 67809 and 67973, unreported, 1996 Ohio App. LEXIS 1685, at 17; R.C.3113.21 (M)(4).
 {¶ 39} In ordering the temporary orders of child support be recalculated utilizing the aforementioned income levels ($25,000 for Wife, and $50,000 for Husband), the trial court stated:
 {¶ 40} "This recalculation shall take into consideration evidenceregarding paid and unpaid child support, the specific times the childrenwere with each party, any relevant amounts paid from counsel trust fund,and any other evidence that would be germane to this issue. Within 21 days Counsel for [Husband] shall make said calculations and submit to counsel for [Wife]. Upon agreement said corrections should be made and filed with the Court and the Licking County CSEA. If corrections in over payment or under payment are needed, funds from the parties (sic) share of real estate proceeds shall be utilized. If the parties cannot agree, a supplemental hearing shall be scheduled. The Court specifically directs this approach in order to try to avoid the parties having to travel for another Court date.
 {¶ 41} "The Court further orders that [Husband's] Counsel hold any proceeds from the sale of real estate * * * of the parties in trust until this matter is resolved.
 {¶ 42} "The Court specifically reserves jurisdiction on this issue." *Page 13 
 {¶ 43} October 27, 2006 Judgment Entry at 17-18. (Emphasis added).
 {¶ 44} Based upon the foregoing, we find the trial court planned for the necessary corrections and ordered such to be worked into the calculations. We find no abuse of discretion.
 {¶ 45} Wife's fifth assignment of error is overruled.
 VI {¶ 46} In her final assignment of error, Wife maintains the trial court erred in failing to credit her with one half the value of the marital assets Husband converted for his own use, which he did in violation of the trial court's restraining order.
 {¶ 47} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." A trial court enjoys broad discretion in deciding whether or not to compensate one spouse for the financial misconduct of the other.Hvamb v. Mishne, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, at ¶ 14. "R.C. § 3105.171(E) permits a trial court to make a distributive award to, inter alia, compensate one spouse for the financial misconduct of another." Id. "Financial misconduct includes the dissipation, concealment, destruction, or fraudulent disposition of assets." Id. The burden of proving financial misconduct is on the complaining spouse. Id. at ¶ 15. "When determining whether to make a distributive award, the court must consider all of the factors identified in R.C. 3105.171(F), and any other factors it deems relevant. The court must make specific written findings of fact to support its decision." Id. *Page 14 
 {¶ 48} A review of the record supports the trial court's finding neither party committed financial misconduct. The trial court found the assets Wife maintains Husband converted were "retained, used or otherwise disposed of by either party." The monies from these assets were used to pay off marital debt and everyday marital expenses. Accordingly, we find the trial court did not err in failing to make a distributive award.
 {¶ 49} Wife's sixth assignment of error is overruled.
 {¶ 50} The judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed.
 Hoffman, P.J., Farmer, J. and Delaney, J. concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed. Cost to appellant.
[1] Husband has not filed a brief in this matter.
[2] Randall, Jr. became emancipated during the proceedings.
[3] Although the trial court did not calculate the spousal support received/paid by the parties in completing the Child Support Computation Summary Worksheet, the worksheet does provide for such. We recommend the inclusion of these amounts when completing these worksheets in future cases. *Page 1