OPINION *Page 2 
{¶ 1} Defendant-appellant, Stacie Clark, appeals from the July 3, 2007, [1] and the November 6, 2007, [2] Judgment Entries of the Richland County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Stacie Clark and appellee Bryan Anthony are the biological parents of Jamie Lynn Anthony (DOB 6/6/01). The two have never been married. Appellant acknowledged paternity of the parties' minor child in June of 2001.
 {¶ 3} On March 25, 2005, appellee filed a "Complaint for Allocation of Parenting Time" seeking reasonable parenting time rights. Pursuant to a Judgment Entry filed on April 29, 2005, appellee was ordered to pay child support in the amount of $881.19 a month, plus a 2% processing fee.[3]
 {¶ 4} While appellee's March 25, 2005, complaint regarding parenting time was pending, appellee, on October 18, 2006, filed a Motion to Modify Child Support. Appellee, in his motion, argued that there had been a "substantial change in the parties' financial circumstances that necessitates a modification of Plaintiff's child support obligation: specifically, Defendant [appellant] is now employed full time and the minor child has entered kindergarten."
 {¶ 5} A hearing on appellee's motion regarding child support was held on May 7, 2007. The following testimony was adduced at the hearing. *Page 3 
 {¶ 6} At the hearing, appellee testified that he was employed at Newman Technology and had been employed there since 1993. He testified that at the time he filed his motion on October 18, 2006, he was working forty (40) hours a week with "a little bit of overtime." Transcript at 6.
 {¶ 7} Testimony was adduced at the hearing that, in 2005, appellee's Medicare wages were $60,117.51 and, in 2006, were $46,531.64. Appellee testified that his hours were cut in 2006 and that, in 2006, he had fractured his ankle, causing him to miss about four months of work. Appellee testified that he was still off on disability as of the date of the hearing and that he was "back on five hours. . .a day." Transcript at 8. While appellee was off on disability for the four months, he received disability pay that was included on his W-2 for 2006.
 {¶ 8} Appellee also testified that beginning in 2007, he was working the full regular shift, but that there had been a change in his job status in late February or early March of 2007. The following testimony was adduced when appellant was asked what the change in status was:
 {¶ 9} "A. Decrease in pay.
 {¶ 10} "Q. Okay and why did you have a decrease in pay at that time?
 {¶ 11} "A. I was stepped down from supervisior to floor associate.
 {¶ 12} "Q. And why were you stepped down?
 {¶ 13} "A. Due to I had that injury, and I couldn't fulfill my duties.
 {¶ 14} "Q. Okay, and please tell us what affect [sic] the ankle injury had on you.
First of all let's go back to when it first occurred. What actually happened?
 {¶ 15} "A. I fell and broke my left ankle. *Page 4 
 {¶ 16} "Q. And how severe a break was it?
 {¶ 17} "A. It broke the bone . . . a chunk off the bone completely.
 {¶ 18} "Q. And —
 {¶ 19} "A. Tore a ligament and my achilles was tore . . . not tore but stretched. It was pretty significant.
 {¶ 20} "Q. Um . . . when you returned to work did you return to full capability?
 {¶ 21} "A. No I did not.
 {¶ 22} "Q. What restrictions were placed on you on your initial return to work?
 {¶ 23} "A. It was an hourly restriction. Five days a week eight hours a day.
 {¶ 24} "Q. So you were originally placed on a forty hour restriction?
 {¶ 25} "A. Yes.
 {¶ 26} "Q. And how long did that restriction continue?
 {¶ 27} "A. Through the rest of the year of `06.
 {¶ 28} "Q. And did that continue into `07?
 {¶ 29} "A. Yeah.
 {¶ 30} "Q. Was there a time that you were removed from that forty hour restriction?
 {¶ 31} "A. Yes, but that was a decrease of hours due to the injury and the healing time. It had gotten worse so they took me back off of work and put me back through rehabilitation, and then as I returned to work it was on the five hour a day status.
 {¶ 32} "Q. When you were stepped down from supervisor were you still on the forty hour restriction?
 {¶ 33} "A. Yes. *Page 5 
 {¶ 34} "Q. Then after you were stepped down from supervisor to associate when did you go on medical leave again?
 {¶ 35} "A. I believe it was a week afterwards.
 {¶ 36} "THE COURT: That would be the February, March time line?
 {¶ 37} "BRYAN ANTHONY: Yeah, I was . . . where it was affecting my job and of course my abilities so I went back to the doctor, and they give [sic] me some tests, and they seen it wasn't healing aggressively enough, and I was still having major problems with it so they took me back off of work.
 {¶ 38} "Q. And how long were you off of work that time?
 {¶ 39} "A. I believe it was five weeks —
 {¶ 40} "Q. And did you receive —
 {¶ 41} "A. — and three days
 {¶ 42} "Q. — some disability pay during that period of time?
 {¶ 43} "A. Yes I did.
 {¶ 44} "Q. Um . . . are you . . . did you return to work?
 {¶ 45} "A. Yes." Transcript at 9-11.
 {¶ 46} Appellee testified that he returned to work on April 16, 2007, with the restriction that he could only work five hours a day. Appellee testified that, after he saw his doctor on May 10, 2007, he believed that he would be authorized to start working forty hours a week and that he would be earning $17.15 an hour as a floor associate. Appellee's pay stub (Plaintiff's Exhibit 3) from the week period ending April, 29, 2007, showed that appellee had worked 25 hours during such period at the rate of $17.15 an hour, for a gross pay of $428.75. Appellee's pay stub (Plaintiff's Exhibit 4) for the period *Page 6 
ending March 4, 2007, which is after appellee was "stepped down" in his position, showed that appellee had worked 32 hours at the pay rate of $17.15 an hour, for a gross pay of $548.80. Appellee testified that he missed one day of work that week.
 {¶ 47} Appellee testified that he did not have an expectation of being returned to a supervisory position, but expected to remain a floor associate earning $17.15 an hour. He further testified that he was not entitled to an attendance bonus or a half year bonus for perfect attendance while he was on leave. He further testified that he would not be entitled to an incentive bonus, which is a bonus for perfect attendance for one year, for the year 2007. Appellee testified that he was unable to meet his current expenses with the child support order that was in place and that he would have to sell his house.
 {¶ 48} On cross-examination, appellee testified that he was a supervisor for eight years and that he ceased being a supervisor the end of February or the beginning of March of 2007. He agreed that he was still a supervisor when he filed his motion asking for a modification of child support and that he continued in such capacity until March of 2007. When asked how he broke his ankle, appellee testified that, in June of 2006, he fell off of a ladder at his house. He testified that he was off of work approximately five months and that, during such time, he received disability benefits. Appellee testified that he took no money home in 2006 after his house payment was taken out of his wages through direct deposit and after the child support was withheld.
 {¶ 49} Appellee, on cross-examination, testified that his $60,117.51 in gross income for 2006 included his income from working as a supervisor, as well as bonuses, incentives and overtime. Appellee testified that, in 2004, his gross income was $70,790.22. When questioned about his child support obligation, appellee admitted that *Page 7 
it was computed based on income of $55,000.00 a year. The following is an excerpt from appellee's testimony:
 {¶ 50} "Q. But in fact in the year 2005 your income was $60,117.51, is that right?
 {¶ 51} "A. Yeah there's probably some more calculations. Yeah here it is $59,557, is that right?" Transcript at 30.
 {¶ 52} Appellee testified that, once he was permitted to return to work with no restrictions, he expected to work forty hours a week as a floor associate at an hourly rate of $17.15. He testified that he would not be offered overtime because it was not available due to low car sales. When questioned, appellee admitted that he had been living with his girlfriend for about a year and that he did not have his house for sale.
 {¶ 53} On redirect, appellee testified that, in 2004, he earned $26,429.00 in overtime, in 2005, he earned $15,422.25 in overtime and, in 2006, earned $7,093.30 in overtime. He testified that he did not expect to earn any overtime in his current position as a floor associate. Appellee testified that, in January of 2007, while he was still a supervisor, he had seven and a half hours of overtime at $221.52 as a result of doing inventory at work one Saturday and that he had no overtime in February and March of 2007. He testified that floor associates were not involved in inventory and also that he paid $15.00 a week in health insurance for himself and the parties' minor child.
 {¶ 54} During his testimony, appellee testified as follows when asked why he was demoted to floor associate:
 {¶ 55} "A. I can't really believe why it wasn't because of my work ethics or the job I was doing. I believe it was due to absences as far as Court appearances go, and then *Page 8 
my health because of my ankle, and I lost my eleven year old daughter, and you know just they didn't feel that I had the mentality that much any more to deal with the people.
 {¶ 56} "Q. And when the reduction, or the change in status, as delivered to you who informed you of that decision?
 {¶ 57} "A. The head of human resources.
 {¶ 58} "Q. What's that person's name?
 {¶ 59} "A. Doug Truman.
 {¶ 60} "Q. And did he give a reason as to why that was occurring?
 {¶ 61} "A. Said because I was injured and I couldn't, because I got hurt basically, that's exactly what he said. He said it had nothing to do with the work I'd done, or my abilities. He said it was basically `cause [sic] I was injured." Transcript at 39.
 {¶ 62} At the hearing, appellant testified on cross-examination that she was employed as a school teacher and that she earned approximately $26,000.00 a year over a twelve month period. She testified that she was not working in April of 2005 because she was going to school full-time. Appellant testified that, in April of 2005, her child care expenses were $90.00 a week.
 {¶ 63} Testimony was adduced at the hearing that the minor child was in a half-day kindergarten program and that appellant was paying $90.00 a week (or $4,680.00 a year) for child care. Appellant testified that she was either going to work or to school to work on her master's degree over the summer and that, if she was working, the minor child would continue in daycare.
 {¶ 64} On direct examination, appellant testified that she was not working when the child support order was established and that $10,712.00 in income was imputed to *Page 9 
her at such time. She testified that she was going to school full-time at such time and that she graduated from college in December of 2005. Appellant testified that she started working in September of 2006 and that she had student loans to pay back.
 {¶ 65} Appellant testified that she intended to keep her child care provider over the summer because she had a contract with the provider. Appellant testified that even when the child was in school, she needed child care both before and after school because of her working hours.
 {¶ 66} At the hearing, appellant testified that she was undecided if the parties' child was going to start the first grade because she had trouble in kindergarten. Appellant testified that the child's sister had committed suicide and that the child was with appellant when appellant "was getting her down." Transcript at 57. She further testified that she believed that it was in the minor child's best interest to remain with her current caregiver based on the trauma the child had suffered. Appellant also testified that she paid $61.50 a month to insure her daughter.
 {¶ 67} At the conclusion of the hearing, the trial court asked both parties to file briefs addressing whether the trial court could consider circumstances that accrued after October 18, 2006, the date when the motion requesting a modification of child support had been filed. Both parties filed briefs.
 {¶ 68} As memorialized in a Judgment Entry filed on July 3, 2007, the trial court found that there had been a change in circumstances warranting a modified child support obligation. The trial court ordered appellee to pay child support in the amount of $598.15 a month, plus a 2% processing fee, for a total of $610.11 a month, effective *Page 10 
September 1, 2006. The trial court, in its Judgment Entry, stated, in relevant part, as follows:
 {¶ 69} "This amount is reasonable, just and appropriate. The Court finds no evidence that the calculated amount is unreasonable, unjust or inappropriate. The computed child support amount is more than 10% less than the previous Order issued on April 29, 2005. There has been a change in circumstance warranting a modified child support obligation effective the date of Plaintiff's filing a Motion for such relief."
 {¶ 70} On July 12, 2007, appellant filed a Request for Findings of Fact and Conclusions of Law. The trial court, in a Judgment Entry filed on November 6, 2007, found that its July 3, 2007 Judgment Entry had sufficiently stated its findings of fact and conclusions of law.[4]
 {¶ 71} Appellant now raises the following assignments of error on appeal:
 {¶ 72} "I. THE TRIAL COURT ERRED IN CONCLUDING THAT THE EVIDENCE SUPPORTED A CHANGE IN CIRCUMSTANCES SUCH THAT A MODIFICATION OF APPELLEE'S CHILD SUPPORT WAS LAWFULLY JUSTIFIED.
 {¶ 73} "II. THE TRIAL COURT ERRED BY USING INCOME INFORMATION FOR THE PARTIES FOR A DATE THAT WAS APPROXIMATELY SEVEN MONTHS AFTER APPELLEE'S MOTION TO MODIFY CHILD SUPPORT WAS FILED.
 {¶ 74} "III. THE TRIAL COURT ERRED BY RETROACTIVELY MODIFYING APPELLEE'S CHILD SUPPORT TO A DATE 48 DAYS BEFORE APPELLEE FILED HIS MOTION TO MODIFY CHILD SUPPORT."
 {¶ 75} For purposes of judicial economy, we shall address appellant's assignments of error out of sequence. *Page 11 
 II {¶ 76} Appellant, in her second assignment of error, argues that the trial court erred when it failed to use the parties' income at the time appellee filed his Motion to Modify Child Support on October 18, 2006. Appellant further contends that the trial court erred in using "the income it determined the [the parties'] had as of the hearing date." We disagree.
 {¶ 77} In the recent case of C.S.E.A., ex rel Hunter v. Harrison, Cuyahoga App. No. 87725, 2007-Ohio-402, the appellant, in July of 1998, filed a motion to modify his $558.00 per month child support obligation based on an alleged decrease in his income. A magistrate dismissed such motion in 2000 and, after the appellant filed objections, the trial court reinstated the motion, but took no action on the same until December of 2005. Following a hearing, the trial court, in December of 2005, ordered the appellant to pay, child support in the amount of $711.36 per month, retroactive to July 1998, based on an upward adjustment in the parties' income for 1998, the year in which the motion was filed.
 {¶ 78} The appellant then appealed, arguing that the trial court had erred in only considering appellant's income for 1998 and not the appellant's income for any subsequent years. The appellant had retired in early 1999. The appellate court, in holding that the trial court had erred in failing to consider the appellant's income from subsequent years, stated, in relevant part, as follows: "In the instant case, Harrison filed subsequent motions during the years in which his original motion was pending. Harrison [the appellant] filed a motion to stay his support order in June 1999, citing his poor *Page 12 
health and retirement. Thus, the court would not be making a sua sponte modification of child support but would be ruling on pending motions.
 {¶ 79} "The trial court should have considered income in both 1998 and 1999 when Harrison filed his motions. The motions were pending on the trial court docket for over seven years, during which Harrison's income dramatically decreased. Harrison made the court aware of his change in circumstances through his initial filing and again in 1999 when he filed a motion for stay. In the motion for stay of execution, he reminded the court that it had yet to rule on his 1998 motion to modify and stated that his income had decreased due to his retirement. Even the trial court acknowledged in its final order that Harrison's income decreased in 1999 when he retired.
 {¶ 80} "The practical effect of holding that the court's order could only reflect the parties' circumstance at the time the original motion was filed would have been to require Harrison to file another motion for modification of support while the 1998 motion was still pending. We see no reason why Harrison should be required to file a subsequent motion to modify when he made the court aware of his impending change in income and filed several additional motions requesting that the court stay or terminate support due to a change in circumstances. Such a rule would not serve the goal of judicial economy or the best interest of the child. See Allen v. Allen, Greene App. No. 2004CA32, 2005-Ohio-431." Id at paragraphs 19-21.
 {¶ 81} We note that, in the case sub judice, appellee, at the hearing, made the trial court aware of the decrease in his income due to his demotion and also of his expectation that he would not be receiving overtime. *Page 13 
 {¶ 82} Appellant, in her brief, relies on O'Neill v. O'Neill (May 20, 1999), Cuyahoga App. No. 73407, 1999 WL 322710 and Justinger v.Schlegel (Sept. 26, 1994), Paulding App. No. 11-94-2, 1994 WL 521205. However, the court, in Hunter, supra. distinguished such cases as follows: "The trial court relied on our previous decision in O'Neill v.O'Neill (May 20, 1999), Cuyahoga App. No. 73407, in which we stated that `a trial court may consider the income of the support obligor only for the year in which the motion was filed; to consider income from years subsequent to the filing year constitutes an impermissible sua sponte modification of child support.'
 {¶ 83} "Although the trial court accurately quoted O'Neill and its progeny, we find that the instant case is distinguishable. The court inO'Neill relied on Justinger v. Schlegel (Sept. 26, 1994), Paulding App. No. 11-94-2, 1994 Ohio App. Lexis 4410, 1994 WL 521205. In bothJustinger and O'Neill, the trial courts modified child support orders and the adversely affected parties appealed the modifications. Both cases were reversed on appeal and, upon remand, the respective trial courts not only entered an initial support modification, but entered new and separate orders to reflect increases in income earned during the time that the appeals had been pending. The appellate courts held that the trial courts could not make what amounted to a sua sponte second modification of child support when only the original motion to modify had been pending. In Justinger, supra at 8, the court held, in pertinent part:
 {¶ 84} "The only way for the trial court to be able to modify support as [it] did * * * was for there to be another motion to modify filed by either [party]. R.C. 3113.215(B)(4) does not provide for a trial court's sua sponte modification of child support. Thus, the *Page 14 
trial court's attempt to modify child support without a motion by either party, constitutes error.'
 {¶ 85} "We agreed in O'Neill and held that the only way in which the trial court could modify the support for the years after the initial motion was filed would be if one of the parties filed a subsequent motion to modify." Id at paragraphs 16-18.
 {¶ 86} We find that the case sub judice is similarly distinguishable from the above cases because this case involved a pending motion for modification of child support that had yet to be ruled on. This case did not involve a modification of child support following a reversal and remand. Moreover, while appellant also cites to Berthelot v.Berthelot, 154 Ohio App.3d 101, 2003-Ohio-4519, 796 N.E.2d 541 in arguing that the trial court was limited to determining the child support obligation as of the time the motion was filed, as noted by the court in Allen, supra, "Berthelot and the cases upon which it relies do not explain their conclusion that the former R.C. 3113.215 prevented consideration of the parties' circumstances during the pendency of the motion." Id at paragraph 26. We note that this Court has been unable to find any cases citing to Berthelot for the proposition that a trial court, in considering a motion to modify child support, must consider the parties' incomes as of the time of filing of such motion and cannot consider income for the years following filing of such motion.
 {¶ 87} For the foregoing reasons, we find that the trial court did not err in using the parties' incomes as of the date of the hearing on May 7, 2007, rather than the parties' incomes at the time appellee filed his motion on October 18, 2006.
 {¶ 88} Appellant's second assignment of error is, therefore, overruled. *Page 15 
 I {¶ 89} Appellant, in his first assignment of error, argues that the trial court erred in finding the existence of a change in circumstances and granting a modification of child support. We disagree.
 {¶ 90} In Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, the Ohio Supreme Court determined an abuse of discretion standard is the appropriate standard of review in matters concerning child support. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Furthermore, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, 1982 WL 2911. Accordingly, a judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Construction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 91} R.C. 3119.79 states, in relevant part, as follows; "(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support *Page 16 
required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount."
 {¶ 92} In order to determine if a change in circumstances has occurred, the trial court must complete a new child support worksheet, recalculating the amount of support required through the line establishing the actual obligation. R.C. 3119.79(A). If the recalculated amount is more than 10 percent less or greater than the amount previously required as child support, it is considered a change in circumstances substantial enough to require modification of the child support amount. Id. The amount calculated in the child support schedules is "rebuttably presumed to be the correct amount of child support due." R.C. 3119.03; Schultz v. Schultz (1996), 110 Ohio App.3d 715, 720,675 N.E.2d 55.
 {¶ 93} In the case sub judice, appellant initially argues that the trial court used the wrong income figures for appellee in determining whether there had been a change in circumstances. The trial court, in the child support worksheet attached to its July 3, 2007, Judgment Entry, listed appellee's annual income as $35,672.00. This was appellee's projected income for 2007. According to appellant, the trial court ignored the fact that appellee "had substantial income in the form of bonuses, overtime (including double time), holiday pay, vacation pay, and other earned income."
 {¶ 94} As an initial matter, we note that as we stated in our discussion of appellant's second assignment of error, the trial court did not err in using the parties incomes as of the time of the May 7, 2007, hearing. *Page 17 
 {¶ 95} Regarding overtime, commissions, and bonuses, R.C. 3119.05(D) provides: "When the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses: (1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed; (2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
 {¶ 96} However, as noted by the court in Thomas v. Thomas, Lucas App. No. L-03-1267, 2004-Ohio-1034, "[t]his formula applies only to regular or expected overtime, and, thus, is not applicable where a obligor no longer expects to receive such income." Id at footnote 2. In the case sub judice, while appellee received overtime in 2004, 2005 and 2006 when he was a supervisor, appellee testified that he did not expect to receive any overtime in his current position as a floor associate. When asked why he did not expect to receive overtime in the future, appellee testified as follows: "Due to car sales pretty much and manufacturing." Transcript at 37. Appellee further testified that he would not be entitled to bonuses for 2007, and that he had no vacation days accumulated as of the date of the hearing. Based on appellee's testimony, the trial court, in its July 3, 2007, Judgment Entry found that "it is not reasonable to expect that [appellee] will earn significant overtime in his current position at the present time." The trial court, as trier of fact, was in the best position to assess credibility.
 {¶ 97} Appellant also argues that the trial court erred in listing her annual income as $26,351.00. However, we note that at the May 7, 2007, hearing in this matter, *Page 18 
appellant testified that she was earning approximately $26,000.00 a year. Once again, as is stated above in our disposition of appellant's second assignment of error, we find that the trial court did not err in using the parties' income as of the time of the hearing in May of 2007. We find, therefore, that the trial court did not err in using appellant's 2007 income of $26,351.00 rather than her income for 2006.
 {¶ 98} In short, we find that the trial court did not err in using the parties' 2007 incomes and that there was competent, credible evidence supporting the income figures used by the trial court.
 {¶ 99} Appellant finally argues that the trial court used an incorrect figure for child care on the child support worksheet attached to its July 3, 2007, Judgment Entry. The trial court, in such entry, found that appellant had "incurred reasonable day care expenses for the minor child in the amount of $4,680." However, the amount that the trial court plugged into the worksheet for child care expenses was $2,983.50.
 {¶ 100} There is no indication in the record that the trial court reduced the child care costs by the Federal and Ohio child tax credits. We find, therefore, that the trial court used an incorrect child care figure on the child support worksheet in computing child support.
 {¶ 101} Appellant's first assignment of error is, therefore, sustained in part.
 III {¶ 102} Appellant, in her third assignment of error, argues that the trial court erred by modifying child support to a date that is 48 days before the motion to modify was filed. We agree. *Page 19 
 {¶ 103} As is stated above, appellee, on October 18, 2006, filed a Motion to Modify Child Support. The trial court, in its July 3, 2007, Judgment Entry, ordered that appellee pay child support in the total sum of $610.00 a month, including poundage, effective September 1, 2006.
 {¶ 104} However, an order modifying child support cannot be retroactive beyond the date that a motion for modification of child support is made. Tobens v. Brill (1993), 89 Ohio App.3d 298, 304,624 N.E.2d 265. See also Yarnell v. Yarnell, Delaware App. No. 05 CAF 0064,2006-Ohio-3929 at paragraph 20 and Meyer v. Meyer, Licking App. No. 2006CA00145, 2008-Ohio-436 at paragraph 38 ("We note modification of a child support order may, generally, be retroactively applied to the date such modifications were first requested; in other words, normally to the date the motion for modification was filed. Also, this retroactivity determination is left to the sound discretion of the trial court.") *Page 20 
 {¶ 105} Appellant's third assignment of error is, therefore, sustained.
 {¶ 106} Accordingly, the judgment of the Richland County Court of Common Pleas, Domestic Relations Division is affirmed in part and reversed and remanded in part.
Edwards, J. Farmer, P.J. and Delaney, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed and remanded in part. Costs assessed 60% to appellant and 40% to appellee.
[1] The trial court, in its July 3, 2007, Judgment Entry, found that there had been a change in circumstances warranting a modified child support obligation.
[2] The trial court in its November 6, 2007, Judgment Entry, denied appellant's request for Findings of Fact and Conclusions of Law regarding the trial court's July 3, 2007, Judgment Entry.
[3] An Administrative Support Order was issued on March 9, 2005.
[4] On October 22, 2007, an Agreed Entry was filed resolving the issue of parenting time. *Page 1