OPINION
{¶ 1} Appellant, Stacey L. Kister, Natural Mother, appeals from the May 6, 2005 and June 14, 2005 judgment entries of the Ashtabula County Court of Common Pleas, *Page 2 
Juvenile Division, awarding legal custody of Kaihla A. Smith ("minor child") to appellee, Thomas L. Smith, Natural Father, and ordering appellant to pay child support.
 {¶ 2} On June 15, 1993, appellant filed a complaint for divorce against appellee, which included gross neglect of duty, extreme cruelty, and incompatibility.[1] Appellee filed an answer and counterclaim against appellant on July 1, 1993. On January 19, 1994, appellant filed a reply.
 {¶ 3} A hearing was held before the trial judge on July 7, 1994. Pursuant to its September 26, 1994 judgment entry, the trial court granted the parties a divorce. The trial court, inter alia, designated appellant as the legal custodian and residential parent of the minor child; granted visitation privileges to appellee; and ordered appellee to pay child support in the amount of $85.29 per week.
 {¶ 4} On March 27, 1996, appellee filed a motion for visitation and motion for contempt against appellant, alleging that she failed to abide by the trial court's September 26, 1994 judgment entry. On March 28, 1997, appellee filed a motion for modification of parental rights and responsibilities. After numerous continuances, a hearing was held on July 18, 1997, and the trial court filed an order for visitation on that same date. On October 7, 1997, appellee filed a motion for contempt, alleging that appellant failed to comply with the trial court's July 18, 1997 judgment entry. Hearings were held on January 7, 1998, and February 20, 1998. Pursuant to its February 20, 1998 judgment entry, the trial court dismissed appellee's contempt charge, terminated the July 18, 1997 standard order of visitation, and ordered a limited visitation schedule. *Page 3 
 {¶ 5} On December 29, 2000, appellee filed a motion to modify visitation as well as a motion for contempt, alleging that appellant violated the September 26, 1994, and February 20, 1998 orders. Also, appellee filed a motion on December 29, 2000, to appoint a guardian ad litem, which was granted by the trial court on April 3, 2001. The trial court appointed June Hawn-Jackson ("GAL") as counsel and guardian ad litem for the minor child.
 {¶ 6} On May 14, 2001, appellee filed a motion to certify the proceedings to the juvenile court, and the GAL filed a similar motion on June 6, 2001. The trial court certified the matter to the juvenile court on June 6, 2001. The juvenile court accepted jurisdiction and reappointed the GAL on July 2, 2001.
 {¶ 7} The GAL filed her report on February 27, 2002, in which she concluded that appellant directly influenced the minor child, causing her to become alienated from appellee. Also on February 27, 2002, the parties entered into an agreed judgment entry, which expanded the visitation schedule and ordered appellant to present the minor child for therapeutic sessions to be conducted with appellee at the office of Sandra McPherson, Ph.D. ("Dr. McPherson").
 {¶ 8} On July 12, 2002, appellee moved the trial court to hold appellant in contempt for her denial of his visitation. On August 6, 2002, the GAL moved for the appointment of separate counsel for the minor child. On August 29, 2002, the trial court appointed Lisa V. Nelson ("Attorney Nelson") as the minor child's attorney. On September 20, 2002, appellee again moved the trial court to hold appellant in contempt for denying his visitation rights. *Page 4 
 {¶ 9} The GAL filed a motion seeking to modify visitation on October 7, 2002. A hearing was scheduled for January 22, 2003. Appellant failed to appear at the hearing and a bench warrant was issued.
 {¶ 10} On February 13, 2003, the trial court awarded an expansion of appellee's visitation rights based upon Dr. McPherson's recommendations and a report by Donald Weinstein, Ph.D., a psychologist who had been appointed to evaluate the parties.
 {¶ 11} On May 1, 2003, appellee filed another motion for contempt against appellant, involving visitation issues. Also on May 1, 2003, appellant turned herself in on the previous bench warrant. She was arraigned and ordered to post a $5,000 personal recognizance bond.
 {¶ 12} Appellee filed another motion for contempt on June 4, 2003. On August 13, 2003, appellant filed a motion to remove the GAL, as well as an emergency motion to suspend the visitation of appellee. On August 14, 2003, Attorney Nelson filed a motion to modify visitation. Pursuant to its August 20, 2003 judgment entry, the trial court denied appellant's two August 13, 2003, and August 14, 2003 motions.
 {¶ 13} The GAL filed a report on September 19, 2003. She believed that the minor child was a neglected child, recommended that the minor child be placed with a caregiver, and that the Ashtabula County Child Services Board ("ACCSB") should assume temporary legal custody. Also on that date, appellee filed a complaint, alleging that the minor child was a neglected and dependent child, as well as a motion for emergency temporary custody.
 {¶ 14} A hearing on appellee's motions to show cause involving visitation issues was held on September 19, 2003. *Page 5 
 {¶ 15} At that hearing, appellee testified that he was continuously denied visitation with the minor child from February 2002 to September 2003. Dr. McPherson indicated that appellant's failure to keep scheduled appointments for the benefit of the minor child had a detrimental impact upon her. She opined that there was no likelihood of future compliance by appellant and that her conduct of alienating the minor child from appellee posed a significant risk to her health, safety, and welfare. At the conclusion of the hearing, the trial judge interviewed the minor child in chambers. Following the interview, the trial judge related his observations of the minor child from the bench, stating that she was "a mess" and that she was "screaming for help." He found that appellant had made a mockery out of the court and the justice system by withholding visitation and refusing to present the minor child for therapy.
 {¶ 16} Pursuant to its September 24, 2003 judgment entry, the trial court held that appellant was in direct contempt of its prior visitation and counseling orders and sentenced her to fourteen days in jail. The trial court determined that the minor child was dependent and that it was in the minor child's best interest to be removed from appellant's care and custody. The trial court granted temporary custody of the minor child to ACCSB.
 {¶ 17} On October 17, 2003, appellee filed an amended complaint and a motion to modify custody of the minor child. On February 6, 2004, Neil R. Wilson ("Attorney Wilson") filed an entry of appearance as well as a motion requesting the court to interview the minor child. On February 10, 2004, the GAL filed a motion to strike. A hearing was held on February 11, 2004. On February 18, 2004, Attorney Nelson filed a motion for an in camera interview. Pursuant to its February 19, 2004 judgment entry, *Page 6 
the trial court ordered Attorney Wilson's entry of appearance stricken from the record, granted the GAL's motion to strike, and ruled that Attorney Nelson was the minor child's attorney.
 {¶ 18} On March 25, 2004, Attorney Wilson filed an entry of appearance as new counsel for appellant. The GAL filed a motion to strike on March 31, 2004. On May 5, 2004, the trial court, on its own motion, ordered Attorney Wilson to appear and show cause why he should not be removed from representing appellant. A hearing commenced on May 26, 2004. Pursuant to its May 26, 2004 judgment entry, the trial court disqualified and removed Attorney Wilson from representing appellant based upon the finding that there was a conflict of interest by virtue of his prior representation of and his interview with the minor child. On October 5, 2004, Attorney Wilson filed a petition for writ of prohibition in this court, Case No. 2004-A-0070, which we dismissed on April 15, 2005.
 {¶ 19} On August 16, 2004, appellee filed a motion to establish child support. On September 7, 2004, ACCSB filed a motion to modify temporary custody to protective supervision. A status conference was held on October 5, 2004, and appellant represented herself pro se. At this hearing, the trial court continued the hearing due to the withdrawal of appellant's prior attorney. She agreed that she would retain counsel by November 8, 2004.
 {¶ 20} A hearing on appellee's motion concerning child support was held before a magistrate on February 10, 2005. Appellant did not attend that hearing. *Page 7 
 {¶ 21} On February 25, 2005, appellant filed a motion to recuse the trial judge from the case, which was denied on March 2, 2005. Also, the Supreme Court of Ohio denied the affidavits of disqualification of the trial judge on April 12, 2005.
 {¶ 22} On March 2, 2005, a hearing was held before the trial judge concerning the modification of custody. Appellant appeared pro se.
 {¶ 23} At that hearing, the evidence demonstrated that the minor child had been successfully integrated into the home and family of appellee and was a happy and healthy child. The minor child had adjusted well to her new home, school, and community. The evidence also showed that appellant's mental health created doubt with respect to her ability to care for the minor child. Specifically, Dr. McPherson testified that appellant continued to engage in behaviors that were negatively affecting the relationship between appellee and the minor child, and that appellant had not obtained the requisite mental health care.
 {¶ 24} Appellant, appellee, and Attorney Nelson each filed findings of fact and conclusions of law with the trial court in March 2005. The GAL filed her report on March 18, 2005. The GAL recommended, inter alia, that ACCSB continue protective supervision and the minor child continue to remain with appellee.
 {¶ 25} Pursuant to its May 6, 2005 judgment entry, the trial court granted appellee's motion for legal custody. The trial court indicated that appellee was awarded legal custody of the minor child and ACCSB was to exercise protective supervision. Appellant filed a timely notice of appeal from that judgment with this court, Case No. 2005-A-0048. *Page 8 
 {¶ 26} On May 13, 2005, the magistrate issued her decision in which she determined that appellant was to pay child support to appellee totaling $443.72 per month, commencing December 19, 2003. Appellant filed objections to the magistrate's decision on May 23, 2005. On June 8, 2005, appellee filed a brief in opposition to appellant's objections to the magistrate's decision. The trial court adopted the magistrate's decision on June 14, 2005. Appellant filed a timely notice of appeal from that judgment with this court, Case No. 2005-A-0056.
 {¶ 27} It is from the May 6, 2005 and June 14, 2005 judgments that appellant assigned the following as error:[2]
 {¶ 28} "[1.] The trial court erred in awarding custody of the minor child to the Ashtabula County Children Services Board, and subsequently to appellee, as punishment for appellant's alleged contempt violations.
 {¶ 29} "[2.] The trial court erred in failing to permit the natural mother to have counsel of her choosing represent her and in denying her request for a continuance pending resolution of Case No. 2004-A-70.
 {¶ 30} "[3.] The trial court erred in ordering [appellant] to pay child support retroactive to a date prior to the filing of a motion for child support.
 {¶ 31} "[4.] The trial court erred in adding the sum of $1,500.00 to the child support computation worksheet on line 20 for [appellee] as out-of-pocket health insurance costs on the child support guidelines worksheet.
 {¶ 32} "[5.] The trial court erred in failing to recuse himself from the proceedings as well as the trial court failing to appoint a new guardian ad litem." *Page 9 
 {¶ 33} In her first assignment of error, appellant argues that the trial court erred in awarding custody of the minor child to the ACCSB, and subsequently to appellee, as punishment for her alleged contempt violations. She presents two issues for our review.
 {¶ 34} In her first issue, appellant contends that the trial court's ruling finding a "dependency" to award custody of the minor child to the ACCSB is void for want of jurisdiction. In her second issue, appellant reiterates her argument in her first assignment of error, alleging that the trial court erred in awarding custody of the minor child to the ACCSB, and subsequently to appellee, as punishment for her alleged contempt.
 {¶ 35} Appellant's first issue, in addition to her second issue relating to the granting of temporary custody to the ACCSB as well as contempt, will not be afforded a merit analysis because they are untimely.
 {¶ 36} App.R. 4(A) provides: "[a] party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure."
 {¶ 37} In the present case, the hearing in which appellant was found in direct contempt and temporary custody was awarded to the ACCSB occurred on September 19, 2003, and the trial court issued its judgment entry on September 24, 2003. Appellant first filed her appeal on May 23, 2005, well beyond the thirty day rule. Thus, because appellant failed to file her notice of appeal within thirty days of the trial court's judgment entry as required by App.R. 4(A), this court is without jurisdiction to consider *Page 10 
her first issue, in addition to her second issue relating to the granting of temporary custody to the ACCSB as well as contempt.
 {¶ 38} Therefore, under the foregoing assignment of error, we will only address the portion of appellant's second issue relating to the trial court's alleged error in subsequently granting custody of the minor child to appellee.[3]
 {¶ 39} R.C. 3109.04(E)(1)(a) governs the modification of a prior decree allocating parental rights and responsibilities for the care of children and states:
 {¶ 40} "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 41} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 42} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person *Page 11 
seeking to become the residential parent.
 {¶ 43} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 44} If a trial court determines that a change of circumstances has occurred, it must then consider the statutory factors governing best interest, pursuant to R.C. 3109.04(F)(1), which provides:
 {¶ 45} "[i]n determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 46} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 47} "(b) * * * [T]he wishes and concerns of the child * * *;
 {¶ 48} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 49} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 50} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 51} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 52} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 53} "(h) Whether either parent previously has been convicted of or pleaded *Page 12 
guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 54} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 55} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 56} The Supreme Court of Ohio held that a decision to modify custody pursuant to R.C. 3109.04(F) will not be disturbed on appeal absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, paragraph one of the syllabus. This standard of review is applied because it is imperative that trial courts are given wide latitude in these cases. Id. at paragraph two of the syllabus. Thus, we will *Page 13 
not reverse the decision of the trial court unless the court acted in a manner that was arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 57} We must note that custody of children may not be changed merely as a sanction for contempt. Culberson v. Culberson (1978),60 Ohio App.2d 304, 306. The record here, however, supports the trial court's determinations for a change of circumstances, which go beyond the issue of contempt. Appellant's instillation of fear in the minor child which led to alienation with appellee, her mental health issues, her inability to care for the minor child, her lack of compliance with respect to court orders, as well as the unlikelihood of appellant to comply with future orders, are sufficient to support a change of circumstances.
 {¶ 58} The trial court's May 6, 2005 judgment entry evidences that the requirements of R.C. 3109.04 have been met and that the motion for legal custody filed by appellee was properly granted. The trial court precisely stated in its judgment entry that there has been a change of circumstances. Reading the trial court's judgment entry in its entirety, it is apparent that the court considered that the harm likely to be caused by a change of environment is outweighed by the advantages of the change to the minor child. R.C. 3109.04(E)(1)(a)(iii).
 {¶ 59} In addition to determining that a change of circumstances has occurred, the trial court considered the applicable R.C. 3109.04(F)(1) statutory factors governing best interest. The trial court determined the following: the transfer of custody to appellee would serve the minor child's best interests; the minor child had been successfully integrated into appellee's home and was happy and thriving; the minor *Page 14 
child had adjusted well to her new home, school, and community; and that appellee would positively promote visitation with the minor child and appellant.
 {¶ 60} Thus, the trial court's decision was based on findings which demonstrated that the best interest of the minor child would be served by the change of custody and that the harm of the change of environment was outweighed by the benefits.
 {¶ 61} Appellant's first assignment of error is without merit.
 {¶ 62} In her second assignment of error, appellant alleges that the trial court erred in failing to permit her to have counsel of her choosing represent her, and in denying her request for a continuance pending resolution of Case No. 2004-A-0070. Appellant presents two issues. In her first issue, she stresses that the trial court erred in disqualifying Attorney Wilson from representing her, when there was no evidence presented of any actual conflict of interest. In her second issue, appellant contends that the trial court erred in denying her a continuance pending this court's resolution of Case No. 2004-A-0070.
 {¶ 63} With respect to her first issue, we note that a trial court has wide discretion in the consideration of a motion to disqualify counsel.Spivey v. Bender (1991), 77 Ohio App.3d 17, 22. When reviewing the disqualification of a party's chosen counsel, appellate courts apply an abuse of discretion standard. Centimark Corp. v. Brown Sprinkler Serv.,Inc. (1993), 85 Ohio App.3d 485, 487.
 {¶ 64} Trial courts are given great latitude in supervising the practice and conduct of attorneys who appear before them. ColumbusCredit Co. v. Evans (1992), 82 Ohio App.3d 798, 803, citing RoyalIndemn. Co. v. J.C. Penney Co. (1986), 27 Ohio St.3d 31, 34-35. Indeed, among the considerations the court may take into account are the *Page 15 
ethical considerations set forth in the Code of Professional Responsibility. Columbus Credit Co., supra, at 804, citing State v.Ross (1973), 36 Ohio App.2d 185, 193-196. The most common basis for trial court disqualification of an attorney is due to an actual or potential conflict of interest. Patrick v. Ressler (Sept. 28, 2001), 10th Dist. No. 00AP-1194, 2001 Ohio App. LEXIS 4403, at 10, citingGlueck v. Jonathan Logan, Inc. (C.A.2, 1981), 653 F.2d 746, 748.
 {¶ 65} In determining whether representation constitutes a conflict of interest, courts look to the "substantial relationship" test discussed at length by the Supreme Court of Ohio in Royal Indemnity, supra. "`[T]he proper standard to be applied under the substantial-relationship test is whether "the factual contexts of the two representations are similar or related."'" Patrick, supra, at 11, quoting Columbus CreditCo., supra, at 808.
 {¶ 66} "As a general rule, there is a rebuttable presumption of disclosure of confidences in cases where there is proof of a former attorney-client relationship concerning substantially related matters."Sarbey v. Natl. City Bank, Akron (1990), 66 Ohio App.3d 18, 27, citingCleveland v. Cleveland Elec. Illum. Co. (N.D.Ohio 1977), 440 F.Supp.193, 209. Disqualification is appropriate when an attorney accepts employment in a case involving a former client where there is a substantial relationship between the existing controversy and the prior representation. Morford v. Morford (1993), 85 Ohio App.3d 50, 57.
 {¶ 67} In the case at bar, Attorney Wilson, while serving as the minor child's counsel, had engaged in a discussion with her concerning this case. After Attorney Wilson was removed as the minor child's attorney, he wanted to represent appellant. It *Page 16 
is clear that a substantial relationship exists, since the factual contexts of the two representations are similar, they both arise out of the same case, deal with the same parties, and involve the role of counsel in the same matter. The trial court did not abuse its discretion by disqualifying Attorney Wilson from representing appellant.
 {¶ 68} Appellant's first issue under her second assignment of error is without merit.
 {¶ 69} Regarding her second issue, we note that the grant or denial of a motion for continuance is a matter within the discretion of the trial court and will only be reversed if the trial court abused its discretion. State v. Unger (1981), 67 Ohio St.2d 65, 67. In reviewing a trial court's decision in granting or denying a continuance, we must balance the interests of judicial economy and justice against any potential prejudice to the defendant. Griffin v. Lamberjack (1994),96 Ohio App.3d 257, 264, citing Niam Investigations, Inc. v. Gilbert
(1989), 64 Ohio App.3d 125, 128.
 {¶ 70} In Unger, supra, at 67-68, the court set forth certain factors that the trial court should consider in deciding whether to grant a motion for a continuance, which include:
 {¶ 71} "* * * the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *Page 17 
 {¶ 72} In the present case, the record evidences appellant's history of firing counsel and requesting numerous continuances in order to avoid a final resolution. We disagree with her contention that the minor child would not be prejudiced by any more continuances, due to the fact that these proceedings commenced in 1993. The trial court properly denied the continuance at issue, and proceeded with the March 2, 2005 custody hearing.
 {¶ 73} Appellant's second issue is not well-taken.
 {¶ 74} Appellant's second assignment of error is without merit.
 {¶ 75} In her third assignment of error, appellant alleges that the trial court erred in ordering her to pay child support, retroactive to a date prior to the filing of a motion for child support. She indicates that appellee filed a motion to establish child support on August 16, 2004. Appellant maintains that the trial court erred in ordering the child support to be made retroactive to December 19, 2003, on the grounds that appellee's amended complaint, filed October 17, 2003, requested "such further relief as the [c]ourt may find serves the best interest of the child."
 {¶ 76} Generally, it is within the sound discretion of the trial court to determine whether to make a modification retroactive, and its decision cannot be reversed absent an abuse of discretion. Mauerman v.Mauerman, 11th Dist. No. 2002-T-0049, 2003-Ohio-3876, at ¶ 18, citingGartland v. Gartland, 11th Dist. No. 2001-T-0063, 2002-Ohio-5160, at ¶ 22. "Absent special circumstances, an order of a trial court modifying child support should be retroactive to the date such modification was first requested; the effective date of modification must coincide with some significant event in the litigation, and an arbitrary date may not be employed." Sutherell v. Sutherell (June 11, 1999), *Page 18 
11th Dist. No. 97-L-296, 1999 Ohio App. LEXIS 2631, at 10, citingState, ex rel. Draiss v. Draiss (1990), 70 Ohio App.3d 418.
 {¶ 77} The Sixth District, in Sheridan v. Sheridan, 6th Dist. No. WM-04-010, 2005-Ohio-6007, at ¶ 40, stated:
 {¶ 78} "Ohio appellate courts have generally held that the trial court should make a order altering a child support obligation effective as of the date the opposing party had notice of the request to alter child support. Murphy v. Murphy (1984), 13 Ohio App.3d 388, 389 * * *; Fox v.Fox, 3d Dist. No. 5-03-42, 2004-Ohio-3344, at ¶ 24-26; Zamos v.Zamos, 11th Dist. No. 2002-P-0085, 2004-Ohio-2310, at ¶ 13; Jurewicz v.Rice, 9th Dist. No. 3190-M, 2001-Ohio-1767; Torbeck v. Torbeck, (Sept. 28, 2001), 1st Dist. No. C-010022, 2001 Ohio App. LEXIS 4371 at 10;Wayco v. Wayco (1999), 5th Dist. No. 1998-CA-00279, 1999 Ohio App. LEXIS 1546, at 8; and Brennan v. Brennan (1996), 10th Dist. No. 95APF10-1288, 1996 Ohio App. LEXIS 950, at 6. If not, the court must provide reasons for choosing another date. Zamos v. Zamos, supra." (Parallel citations omitted.)
 {¶ 79} In the instant matter, the trial court indicated the following in its June 14, 2005 judgment entry:
 {¶ 80} "The Mother's first and second objections relate to the retroactive commencement date of the order. Mother points out that Father did not file a Motion to Establish Child Support until 08/23/2004. However, Father's Amended Complaint for Custody, filed 10/17/2003, requests `temporary custody of said child and such furtherrelief as the Court may find serves the best interest of thechild.' Amended Complaint at 2 (Emphasis added). *Page 19 
 {¶ 81} "The Father was granted placement of the child starting 12/19/2003. It is Father who has provided for the child's needs since then, not Ashtabula County Children's Services Board (ACCSB). The Mother certainly was aware that the child was not residing with her, and she was not having to pay for the child's expenses. The rule in Ohio is that support can be [set] or modified only retroactive to the filing of a Motion. See, e.g. Tobens v. Brill, 89 Ohio App.3d 298, 304 (1993). The purpose of the rule is so that the parties can prepare their finances accordingly. The Court finds in this case that Father's request for `such further relief meets the notice requirement of the rule, and that Mother should have expected to reimburse Father for her share of the child's support, retroactive to the time he got placement.
 {¶ 82} "Having been put on notice by the request for `such further relief as may be in the child's best interests, it would be a complete fiction to find that Mother does not have a duty to help support the child retroactive to the time the child was placed in the Father's home. * * *"
 {¶ 83} Here, the effective date of the order coincides with the date the minor child was placed in the home of appellee, December 19, 2003, a significant event in this case. Sutherell, supra, at 10. The record establishes that appellant was put on notice when appellee filed his amended complaint on October 17, 2003, requesting "such further relief" as the court may find which serves the best interest of the minor child. Thus, we cannot say that the trial court abused its discretion in ordering the child support to be made retroactive to December 19, 2003. Accordingly, the decision to order appellant to pay child support effective December 19, 2003, is not arbitrary or otherwise unrelated to the facts in this case. *Page 20 
 {¶ 84} Appellant's third assignment of error is without merit.
 {¶ 85} In her fourth assignment of error, appellant maintains that the trial court erred in adding the sum of $1,500 to the child support computation worksheet on line twenty for appellee as out of pocket health insurance costs. She stresses that appellee testified that he had no out of pocket expenses for the health insurance coverage provided by his employer for the minor child, and there was no other evidence which would justify the additional sum of $1,500.
 {¶ 86} Civ.R. 53, which was amended on July 1, 2006, provides in section (D)(3)(b)(iv): "* * * a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."
 {¶ 87} In the case sub judice, again, a hearing on appellee's motion concerning child support was held before the magistrate on February 10, 2005. Appellant did not attend that hearing. The magistrate issued her decision on May 13, 2005. On page one of her decision, the magistrate referenced appellee's new employment and stated that "[h]ealth insurance will be available 04/17/2005 at a cost [to appellee] of $1,500.00 per year." Appellant timely filed her objections on May 23, 2005. However, appellant made no mention of the $1,500 health insurance cost. Because the foregoing issue was not raised before the trial court, appellant has waived her argument contesting that portion of the trial court's decision on appeal. Civ.R. 53(D)(3)(b)(iv).
 {¶ 88} Appellant's fourth assignment of error is without merit. *Page 21 
 {¶ 89} In her fifth assignment of error, appellant alleges that the trial judge showed prejudice toward her and erred in failing to recuse himself from the proceedings. Also, appellant contends that the trial court erred in failing to appoint a new guardian ad litem.
 {¶ 90} With respect to the trial judge's failure to recuse himself, R.C. 2701.03 sets forth the procedures for seeking disqualification of a Court of Common Pleas judge for prejudice. Under that statute, a party may file an affidavit of disqualification with the clerk of the Supreme Court of Ohio. Authority to pass upon the disqualification of a judge of the Court of Common Pleas is vested in the Chief Justice of the Supreme Court of Ohio under Section 5(C) of Article IV of the Ohio Constitution.MacConnell v. Safeco Property, 2d Dist. No. 21147, 2006-Ohio-2910, at ¶ 36, citing Beer v. Griffith (1978), 54 Ohio St.2d 440. This procedure provides "the exclusive means by which a litigant may claim that a common pleas judge is biased and prejudiced." Jones v. Billingham
(1995), 105 Ohio App.3d 8, 11.
 {¶ 91} In the instant matter, appellant requested the trial judge to recuse himself. The trial court refused, and appellant filed an affidavit of disqualification with the Supreme Court of Ohio, which was denied. We have no authority to review the issue of the trial judge's alleged bias and prejudice.
 {¶ 92} Regarding appellant's contention that the trial court erred by failing to appoint a new guardian ad litem, we note that a licensed attorney may serve as a guardian ad litem. The same individual may also serve as the child's legal representative in a proceeding before the juvenile court so long as no conflict arising *Page 22 
from those dual roles exists. Juv.R. 4(C)(1). If either that person or the court finds a conflict, the court must appoint a new guardian ad litem. Juv.R. 4(C)(2).
 {¶ 93} Appellant's reliance on In re Kheirkhah, 11th Dist. No. 2002-L-128, 2004-Ohio-521, is misplaced. Kheirkhah dealt solely with the issue of a guardian ad litem filing and prosecuting a complaint alleging neglect. This court held that a guardian ad litem cannot prosecute such a complaint. Id. at ¶ 17. We did not rule that a guardian ad litem could not file motions in the best interest of the child.
 {¶ 94} The guardian ad litem "shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child." R.C. 2151.281
(I).
 {¶ 95} In this matter, the GAL, an attorney at law, had authority to file whatever motions she thought necessary to advance the interests of the minor child. There is no evidence in the record before us that the GAL became an advocate for either party. As such, the trial court had no reason to dismiss the GAL and appoint a new guardian ad litem.{¶ 96} Appellant's fifth assignment of error is without merit.{¶ 97} For the foregoing reasons, appellant's assignments of error are not well-taken. *Page 23 
The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
CYNTHIA WESTCOTT RICE, P.J., and DIANE V. GRENDELL, J., concur.
[1] Appellant and appellee were married by common law in 1988, and were ceremonially married on November 1, 1991. The minor child, d.o.b. December 12, 1991, was the only child born as issue of the marriage.
[2] On August 24, 2005, this court, sua sponte, consolidated Case Nos. 2005-A-0048 and 2005-A-0056 for purposes of briefing, oral argument, and disposition.
[3] The trial court granted appellee's motion for legal custody on May 6, 2005. Appellant filed a timely notice of appeal from that judgment with this court, Case No. 2005-A-0048. Thus, the trial court's grant of custody to appellee is properly before us. *Page 1