[Cite as *Mayberry v. Mayberry*, 2016-Ohio-1031.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Erica Mayberry [Duke], | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-160 |
| v. | : | (C.P.C. No. 11DR02-649) |
| Rodney Mayberry, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 15, 2016

**On brief:** Law Office of Margaret A. Smith, and *Margaret A. Smith*, for appellee. **Argued:** *Margaret A. Smith*.

**On brief:** The Nicodemus Law Office, LPA, and *Bradley S. Nicodemus*, for appellant. **Argued:** *Bradley S. Nicodemus*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations.

KLATT, J.

{¶ 1} Defendant-appellant, Rodney Mayberry, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, which modified his child support obligation. For the following reasons, we affirm that judgment in part and reverse it in part.

{¶ 2} Mayberry and plaintiff-appellee, Erica Duke, married on October 30, 1998. During the marriage, the parties had two children; one born in 1999 and the other in 2001. The trial court granted the parties a divorce in an agreed entry dated October 21, 2011. Additionally, the trial court issued a shared parenting decree that adopted the terms

of the parties' shared parenting plan. According to the plan, the children primarily resided with Duke. Mayberry exercised parenting time (1) on Monday, Tuesday, and Wednesday, from after school until Duke could pick the children up; (2) on Thursday, from after school until 8:00 p.m.; and (3) on Friday, from after school until Saturday at 6:00 p.m. During summer break, the children spent time with Mayberry during Duke's workday and, every other week, the children stayed with him all day Friday and Saturday until 6:00 p.m.

{¶ 3} In addition to setting the shared parenting schedule, the shared parenting plan required Mayberry pay Duke $900 in child support per month.[1] Pursuant to the child support worksheet and schedule, Mayberry's child support obligation amounted to $1,099.77 per month. The trial court, however, found a $200 downward deviation appropriate because Mayberry would be exercising parenting time in excess of that normally granted under former Loc.R. 27 of the Court of Common Pleas of Franklin County, Division of Domestic Relations, which set forth the model parenting time schedule.

{¶ 4} On December 20, 2012, Mayberry moved for a modification of the shared parenting plan and/or reallocation of parental rights and responsibilities. Duke filed her own motion for modification and/or reallocation on February 11, 2013. Through mediation, the parties agreed to an amended shared parenting plan that modified the parenting time schedule. Under the amended plan, the children alternate between Mayberry's and Duke's homes on a weekly basis. During the school year, the children spend Wednesday evening with the parent with whom they are not staying the remainder of the week. The parties began following the new parenting time schedule on June 28, 2013, but the amended shared parenting plan was not filed with the court until almost one year later, on June 25, 2014.

{¶ 5} Although the parties reached an agreement regarding changes to the parenting time schedule, they could not agree on the amount of child support Mayberry would pay to Duke. The magistrate held a hearing so the parties could present evidence

---

[1] All child support obligations entail a processing fee. For ease of discussion, we will omit mention of the processing fee when referring to the amounts of child support awarded in this case. Additionally, we note that the child support amounts discussed in this decision are the amounts due when private health insurance is in effect.

regarding the appropriate amount of child support. Both Mayberry and Duke testified, and each presented documentary evidence regarding their income for 2011, 2012, and 2013.

{¶ 6} On August 4, 2014, the magistrate issued a decision that ordered Mayberry to pay $884 per month in child support commencing June 25, 2014, the date on which the amended shared parenting plan was filed with the trial court. The magistrate arrived at $884 as the amount of the monthly child support obligation by decreasing the amount calculated using the child support worksheet and schedule (i.e., $1,084) by $200. The magistrate found a downward deviation appropriate given Mayberry's increased parenting time, but the magistrate limited that deviation to $200 in light of the disparity between Mayberry's and Duke's incomes and the fact that Mayberry had remarried and lived in a two-income household.

{¶ 7} Mayberry asserted multiple objections to the magistrate's decision. In relevant part, Mayberry contended that the magistrate erred in: (1) calculating his income and Duke's income, (2) setting June 25, 2014 as the effective date for payment of the modified child support obligation, and (3) only granting him a $200 downward deviation from the guideline child support amount.

{¶ 8} In a decision and entry dated February 18, 2015, the trial court granted some of Mayberry's objections and denied others. The trial court recalculated Duke's income, but rather than increase that income, as Mayberry advocated, the trial court decreased Duke's income. The trial court rejected Mayberry's bid for a reduction of his income. With regard to the effective date for payment of the modified amount of child support, the trial court determined that December 20, 2012—the date Mayberry moved for modification of the shared parenting plan and/or reallocation of parental rights and responsibilities—was the appropriate effective date. Finally, the trial court found that the amount of child support it calculated using the child support worksheet and schedule was just, appropriate, and in the best interest of the children. The trial court, therefore, refused to deviate from that amount and ordered Mayberry to pay Duke $1,117.20 per month in child support.

{¶ 9} Mayberry now appeals the February 18, 2015 decision and entry, and he assigns the following errors:

1. The trial court erred by failing to include and attach a completed child support worksheet to its Decision and Entry.

2. The trial court erred by arbitrarily including Appellant's term life salary deduction payment into Appellant's income when the trial court did not give a deduction for the payment.

3. The trial court erred by unreasonably including in Appellant's overtime earnings "nonrecurring or unsustainable" income as defined by R.C. § 3119.01(B)(8).

4. The trial court erred by failing to include Appellant's spousal support paid and Appellee's spousal support received in its child support calculation.

5. The trial court erred by arbitrarily setting the effective date of its child support order to the date of Appellant's originating motion and not to the date in which a material change of circumstance occurred.

6. The trial court erred by arbitrarily determining that Appellant is the child support obligor.

7. The trial court erred by arbitrarily and unreasonably failing to deviate Appellant's child support obligation in recognition of his additional parenting time where the court has previously deviated Appellant's child support in recognition of his increased parenting time.

{¶ 10} By Mayberry's first assignment of error, he argues that the trial court erred by not including in the record a copy of the worksheet it used to calculate the amount of child support that Mayberry owed. We agree that the trial court erred as alleged, but we find that error harmless.

{¶ 11} When modifying a child support order, the trial court must "calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02. The worksheets guide the trial court through the statutory process for setting the amount of child support to be paid. R.C. 3119.022 (setting forth the worksheet applicable to shared parenting and when one parent is the residential parent and legal custodian); 3119.023 (setting forth the worksheet applicable when parents have split parental rights and responsibilities). Pursuant to that

process, the trial court first determines the amount of each parent's total gross annual income, adjusts each income with applicable deductions, and then adds the adjusted incomes together to reach the parents' total combined annual income. R.C. 3119.022; 3119.023 (lines 1 through 15). In most cases, the next step requires the court to find the amount of the parents' total combined annual income on the child support schedule to ascertain the basic child support obligation for that level of income.[2] R.C. 3119.022; 3119.023 (line 17). In cases of shared parenting, such as this case, the court then splits the basic child support obligation between the parents by assigning to each parent the portion of the total obligation that corresponds with that parent's percentage of the total combined annual income. R.C. 3119.022 (line 18). Thus, for example, a parent who earns 75 percent of the total combined annual income will receive 75 percent of the basic child support obligation, and the other parent, who earns 25 percent of the total, will receive 25 percent of the basic child support obligation. Finally, the trial court makes calculations to determine the amount of child support owed when health insurance is provided and when health insurance is not provided. R.C. 3119.022 (lines 19 through 26); 3119.023 (lines 19 through 24). The final calculations also include any deviation adjustments the trial court may make to the actual child support obligation if it is unjust or inappropriate and not in the best interest of the child. R.C. 3119.022 (line 27); 3119.023 (line 25); 3119.22.

{¶ 12} The trial court must not only complete the applicable child support worksheet, it must also include the completed worksheet in the record. *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), paragraph one of the syllabus; *Wehrle v. Wehrle*, 10th Dist. No. 12AP-386, 2013-Ohio-81, ¶ 9. The inclusion of a completed worksheet in the record serves two purposes, both of which relate to the appeal of a child support order. First, inclusion of the worksheet allows an appellate court to review whether the trial court followed the statutorily mandated process for calculating child support. Second, inclusion of the worksheet provides an appellate court with the data the trial court used to complete the child support calculation, such as the amounts of each parent's gross annual income, the amounts of any income adjustments, and the amounts of any deviation adjustments. In short, inclusion of the worksheet in the record exposes all aspects of the

---

[2] The process varies from the one described herein if the parents' combined annual income is less than $6,000 or greater than $150,000. *See* R.C. 3119.04.

child support calculation, thus ensuring meaningful appellate review of the child support order. *Marker* at 142; *Brown v. Brown*, 10th Dist. No. 99AP-736 (Mar. 14, 2000).

{¶ 13} Here, the trial court completed a worksheet to calculate the amount of child support Mayberry owed. We know this because the trial court labeled the worksheet "Exhibit A" in its February 18, 2015 judgment and referred to the worksheet throughout the judgment. The trial court, however, neglected to actually include the worksheet in the record.

{¶ 14} The failure to add the worksheet to the record is error. But not all error results in reversal of a trial court's judgment. In order to secure a reversal, an appellant must not only show error, he must also show that the error materially prejudiced him. *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 26; *Theobald v. Univ. of Cincinnati*, 160 Ohio App.3d 342, 2005-Ohio-1510, ¶ 17 (10th Dist.), *aff'd*, 111 Ohio St.3d 541, 2006-Ohio-6208.

{¶ 15} In the case at bar, Mayberry does not assert that the trial court deviated from the statutorily mandated process of determining child support. In other words, Mayberry concedes that the trial court followed the steps laid down in the worksheet. Rather than attack the process, Mayberry challenges the information inputted into the worksheet; namely, the amount of his and Duke's gross incomes, the amount of his adjusted gross income, and the court's denial of any deviation adjustment. To review these arguments, we do not need the worksheet because the trial court's judgment contains the same information as the worksheet. Indeed, our analysis of these arguments turns on the reasoning and conclusions set forth in the judgment, which is the source of the figures entered into the worksheet.

{¶ 16} In appeals such as this, where the record provides sufficient detail for an appellate court to review a child support award, the failure to incorporate the worksheet into the record does not materially prejudice the appellant. *Longo v. Longo*, 11th Dist. No. 2008-G-2874, 2010-Ohio-3045, ¶ 35-36; *Wellman v. Munyan*, 4th Dist. No. 99CA2638 (June 14, 2000); *Carr v. Blake*, 1st Dist. No. C-990174 (Feb. 18, 2000); *Guidera v. Guidera*, 3d Dist. No. 1-93-16 (June 30, 1993). When an appellate court can conduct a meaningful review of the trial court's judgment without the worksheet, the

absence of the worksheet does not amount to reversible error.  *Longo* at ¶ 35-36; *Carr*; *Guidera*.

{¶ 17} None of Mayberry's arguments requires our review of something that appears in the worksheet and nowhere else in the record.  Moreover, Mayberry's attorney conceded during oral argument that this court should not reverse and remand this case just so the trial court can add the worksheet to the record.  Given all the foregoing, we conclude that the absence of the worksheet from the record does not materially prejudice Mayberry.  Accordingly, we conclude that the lack of a worksheet does not warrant reversal of the trial court's judgment, and thus, we overrule Mayberry's first assignment of error.

{¶ 18} The remainder of Mayberry's assignments of error challenge the trial court's determination that he must pay $1,117.20 per month in child support.  Appellate courts review child support matters under an abuse-of-discretion standard.  *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, ¶ 9.  Thus, an appellate court will only reverse a trial court decision regarding child support if the decision is unreasonable, arbitrary, or unconscionable. *Id.*

{¶ 19} By his second assignment of error, Mayberry argues that the trial court erred in including in his gross annual income the $60 that he receives from his employer for term life insurance.  We disagree.

{¶ 20} As we explained above, a trial court begins the calculation of child support by determining each parent's gross annual income.  R.C. 3119.01(C)(7) defines "gross income" as:

> the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department

of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income.

{¶ 21} During the hearing before the magistrate, Mayberry introduced into evidence the last pay stub he received during 2013. That pay stub sets forth the amount of Mayberry's earnings for the year by category and includes categories for regular pay, overtime pay, uniform allowance, holiday pay, service credit pay, bank compensation time, shift differential, term life insurance, and fitness incentive. Under the term-life-insurance category, the pay stub lists $60 in earnings. Based upon this evidence, the trial court included the $60 that Mayberry received for term life insurance in Mayberry's gross annual income. We find no abuse of discretion in this inclusion, and thus, we overrule Mayberry's second assignment of error.

{¶ 22} By his third assignment of error, Mayberry argues that the trial court erred when it failed to exclude from its calculation of his gross annual income certain overtime pay that Mayberry contends is nonrecurring or unsustainable income. We disagree.

{¶ 23} R.C. 3119.01(C)(7) excludes certain types of income from the definition of "gross income." These exclusions include "[n]onrecurring or unsustainable income or cash flow items." R.C. 3119.07(C)(7)(e). A "[n]onrecurring or unsustainable income or cash flow item" is:

> [a]n income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. "Nonrecurring or unsustainable income or cash flow item" does not include a lottery prize award that it not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise uses to produce income or cash flow for a period of more than three years.

R.C. 3119.01(C)(8).

{¶ 24} Pursuant to the statutory definition of a "[n]onrecurring or unsustainable income or cash flow item," the income or cash flow item at issue is only nonrecurring or unsustainable if: (1) the parent does not receive it for more than three years and (2) the parent does not expect to continue to receive it on a regular basis. Consequently, an income or cash flow item received on a one-time-only basis, such as a settlement payment

or a signing bonus, qualifies as nonrecurring or unsustainable. *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252, ¶ 29. On the other hand, an income or cash flow item received on a regular basis for more than three years generally is not nonrecurring or unsustainable, even if the amount of the income or cash flow item varies or is expected to vary from year to year. *Id.* at ¶ 28; *accord Reynolds-Cornett v. Reynolds*, 12th Dist. No. CA2013-09-175, 2014-Ohio-2893, ¶ 22 (rejecting a parent's argument that his overtime pay was nonrecurring or unsustainable income because his new position provided only minimal overtime, unlike his previous position, which forced him to work significant overtime); *Poling v. Poling*, 10th Dist. No. 13AP-189, 2013-Ohio-5141, ¶ 10 ("[I]ncome entirely based on commission sales is not 'nonrecurring,' for purposes of determining a parent's child support obligation, simply because the parent testifies that such income will slow down in the future.").

{¶ 25} Here, Mayberry works for the Columbus Division of Police. Mayberry earned $1,454.46 in overtime pay in 2011, $20.68 in 2012, and $9,841.12 in 2013. Under R.C. 3119.05(D), when calculating a parent's gross income, a court must include the lesser of (1) the yearly average of all overtime pay received during the three years immediately prior to the time when the person's child support obligation is being computed or (2) the total overtime pay received during the year immediately prior to the time when the person's child support obligation is being computed. In compliance with this rule, the trial court added to Mayberry's gross income $3,772.09, which is the average of the overtime pay that Mayberry received in 2011, 2012, and 2013.

{¶ 26} Mayberry argues that the trial court should have excluded $7,510.32 from his 2013 overtime pay prior to averaging. Mayberry testified that the overtime that he worked to earn the $7,510.32 was only available due to a community service initiative grant. The grant paid for 12 weeks of overtime so the Columbus Division of Police could "fight certain hot spots in the [c]ity" with an increased police presence during the summer of 2013. (Tr. 53.) Mayberry stated that the Columbus Division of Police "d[i]dn't always get" the grant, and the 2013 grant was "the first time [he could] remember [the division] getting it." (Tr. 53.)

{¶ 27} Due to the irregular nature of the grant, Mayberry contends that the overtime pay attributable to the grant is nonrecurring or unsustainable. We are not

persuaded. While an increase in Mayberry's overtime pay due to the grant may occur only once, his annual receipt of overtime pay remains constant. Mayberry has regularly received overtime pay in the past, and he expects to receive it in the future. The overtime pay due to the grant, therefore, only varies the amount of overtime pay received. Variability in the amount of regularly received income does not necessarily convert that income into nonrecurring or unsustainable income. *Wolf-Sabatino* at ¶ 28; *Reynolds-Cornett* at ¶ 22; *Poling* at ¶ 10-11. Accordingly, we find no abuse of discretion in the trial court's treatment of Mayberry's overtime pay, and thus, we overrule Mayberry's third assignment of error.

{¶ 28} We now skip ahead to Mayberry's fifth assignment of error, by which he argues that the trial court erred in making his modified child support obligation effective from December 20, 2012, the date on which he moved to modify the shared parenting plan and/or reallocate parental rights and responsibilities. We disagree.

{¶ 29} As we stated above, Mayberry moved for a modification of the shared parenting plan and/or reallocation of parental rights and responsibilities on December 20, 2012. Duke filed her own motion for modification and/or reallocation on February 11, 2013. After filing these motions, the parties agreed upon a modified parenting time schedule. The parties, however, could not reach an agreement regarding the modification of child support.

{¶ 30} The parties' December 20, 2012 and February 11, 2013 motions came before a magistrate for an evidentiary hearing so the magistrate could resolve the parties' dispute over the appropriate amount of child support. The magistrate issued a decision setting the amount of Mayberry's child support obligation at $884 per month, effective June 25, 2014. The magistrate chose June 25, 2014 as the effective date because that was the date of the filing of the amended shared parenting plan, which set forth the agreed-upon modified parenting time schedule.

{¶ 31} Mayberry objected to the magistrate's choice of effective date. In arguing his objections, Mayberry recognized that, as a general rule, a modified child support obligation is effective from the filing date of the motion to modify child support. Mayberry then acknowledged that "[a] strict reading of precedent would indicate that it would be appropriate to make [his] new child support obligation amount effective the day

he filed his motion to modify parental rights, i.e. December 20, 2012." (Defendant's supplemental memorandum in support of his objections to the magistrate's decision, at 19.) Nevertheless, Mayberry advocated for June 28, 2013 as the more appropriate effective date. June 28, 2013 was the date on which the parties began operating pursuant to the modified parenting time schedule, even though the amended shared parenting plan was not filed with the trial court until approximately one year later.

{¶ 32} The trial court actually granted Mayberry's objection. However, the trial court did not grant Mayberry the specific relief he sought. The court instead found the general rule regarding the effective date "entirely reasonable," and thus, it set December 20, 2012 as the effective date for the modified child support. (Feb. 18, 2015 Decision and Entry, at 9.)

{¶ 33} On appeal, Mayberry argues that the trial court could not choose December 20, 2012 as the effective date because he did not move for modification of his child support obligation on that date. Mayberry now contends that his December 20, 2012 motion only sought modification of his parental rights and responsibilities, and not modification of child support. We find this argument disingenuous. The payment of child support *is* a parental responsibility, so Mayberry's attempt to distinguish between parental responsibilities and the payment of child support fails.

{¶ 34} More importantly, Mayberry never claimed before the trial court that his motion did not extend to child support modification. Mayberry instead used his motion as a vehicle to obtain a redetermination of his child support obligation. Mayberry also acknowledged to the trial court that the date he filed his motion—December 20, 2012— was the appropriate effective date if the trial court followed the general rule regarding effective dates. Implicit in this acknowledgment is Mayberry's concession that his December 20, 2012 motion sought to modify child support because the general rule employs the filing date of such a motion as the effective date.

{¶ 35} Mayberry now wants to disavow his motion's purpose. Mayberry, however, cannot recharacterize his motion when that recharaterization is inconsistent with the actions he took and argument he made in the trial court. *See Zawahiri v. Alwattar*, 10th Dist. No. 07AP-925, 2008-Ohio-3473, ¶ 17 (holding that a party may not discard the theory advanced in the trial court and substitute a new, contradictory theory on appeal).

{¶ 36} Mayberry's use of his motion as the means for seeking a modification of child support distinguishes this case from *Maynard v. Landon*, 5th Dist. No. 2006-CA-0015, 2007-Ohio-2813, the case Mayberry primarily relies upon. Mayberry argues that *Maynard* holds that the filing date of a motion specifically requesting modification of child support can serve as the effective date for a modification, but the filing date of a more general motion to modify parental rights and responsibilities cannot. However, the *Maynard* court made no such distinction. In *Maynard*, the Fifth District Court of Appeals did not consider the father's motion for modification of parental rights and responsibilities in reviewing the effective date because that was not the motion which led to the modification of child support. The trial court modified the child support obligation upon the mother's motion, so the filing date of that motion was the appropriate effective date. *Id.* at ¶ 9-10. While the father filed a more general motion and the mother filed a more specific one, that difference in the motions played no role in the court's analysis.

{¶ 37} Here, unlike in *Maynard*, Mayberry's general motion for modification of parental rights and responsibilities resulted in the modification of the child support obligation. Thus, the trial court could look to the date on which Mayberry filed his motion in setting the effective date of the modified child support obligation.

{¶ 38} Generally, the choice of the effective date for payment of a modified child support obligation is left to the discretion of the trial court. *Nichols v. Nichols*, 10th Dist. No. 13AP-13, 2013-Ohio-3927, ¶ 20; *O'Brien v. O'Brien*, 10th Dist. No. 07AP-313, 2007-Ohio-5448, ¶ 10. As Mayberry acknowledged, trial courts most often make modifications of child support effective from the date the motion for modification was filed. *Baxter v. Thomas*, 8th Dist. No. 101186, 2015-Ohio-2148, ¶ 36; *Nichols* at ¶ 20; *Sandel v. Choma*, 9th Dist. No. 25995, 2012-Ohio-3781, ¶ 5; *In re P.J.H.*, 196 Ohio App.3d 122, 2011-Ohio-5970, ¶ 12 (2d Dist.); *Meyer v. Meyer*, 4th Dist. No. 2006CA00145, 2008-Ohio-436, ¶ 38; *Maynard* at ¶ 10; *In re Smith*, 11th Dist. No. 2005-A-0048, 2007-Ohio-893, ¶ 76. "[T]his makes decisions regarding the effective date of child support modification consistent, predictable, and fair." *Maynard* at ¶ 10. Alternatively, a trial court may chose an effective date subsequent to the filing of the motion for modification if such a date bears significance in relation to the grounds for the modification and the court explains its

reasoning for selecting the date. *Baxter* at ¶ 36; *Sandel* at ¶ 6; *P.J.H.* at ¶ 18-19; *Smith* at ¶ 76, 83.

{¶ 39} Here, the effective date Mayberry champions—June 28, 2013—bears significance to the modification of child support because that was the date on which the parties implemented their new parenting time schedule. The contemplated changes to the parenting time schedule impelled Mayberry to also pursue a modification of child support. The trial court, however, decided to make the child support modification effective on December 20, 2012, the date Mayberry moved for modification. We cannot find that the trial court abused its discretion in following the general rule regarding effective dates. While Mayberry puts forth multiple reasons justifying the selection of June 28, 2013 as the effective date, those reasons do not make the selection of December 20, 2012 unreasonable, arbitrary, or unconscionable. Accordingly, we find no abuse of discretion in the choice of the effective date, and thus, we overrule Mayberry's fifth assignment of error.

{¶ 40} We now backtrack to Mayberry's fourth assignment of error, by which he argues that the trial court erred in omitting the spousal support paid and received from its child support calculation. To a limited extent, we agree.

{¶ 41} The definition of "gross income" includes "spousal support actually received." R.C. 3119.01(C)(7). However, as we explained above, certain types of income are excluded from the definition of "gross income," and nonrecurring or unsustainable income is among the exclusions. R.C. 3119.01(C)(7)(e). Duke argues that this exclusion applies to the spousal support that she received pursuant to the divorce decree. Thus, Duke concludes the trial court did not err in omitting the spousal support that she received from her gross annual income.

{¶ 42} In the October 21, 2011 divorce decree, the trial court ordered Mayberry to pay Duke $600 per month in spousal support for three years. As we stated above, pursuant to the statutory definition of a "[n]onrecurring or unsustainable income or cash flow item," the income or cash flow item at issue is only nonrecurring or unsustainable if: (1) the parent does not receive it for more than three years and (2) the parent does not expect to continue to receive it on a regular basis. R.C. 3119.01(C)(8). Duke's spousal support fits within this definition. Duke received the support for only three years, and she

could not expect to receive it at all after October 21, 2014. Consequently, the spousal support qualifies as nonrecurring or unsustainable income, and the trial court did not err in removing it from Duke's income.

{¶ 43} This conclusion does not end our analysis of the spousal support. Under R.C. 3119.05(B), "the amount of any court-ordered spousal support actually paid shall be deducted from the gross income of [the paying] parent to the extent * * * that payment of the court-ordered spousal support is verified by supporting documentation." Thus, a trial court errs if it does not subtract spousal support payments from the paying parent's gross income when calculating child support. *Wolf-Sabatino*, 10th Dist. No. 12AP-1042, 2014-Ohio-1252, at ¶ 26.

{¶ 44} Here, Duke reported the receipt of spousal support as income on her tax returns. The tax returns, therefore, constitute documentation verifying Mayberry's payment of court-ordered spousal support. Consequently, the trial court erred in failing to deduct the spousal support paid from its calculation of Mayberry's gross annual income.

{¶ 45} In his appellant's brief, Mayberry concedes that he should not receive an adjustment for spousal support after October 21, 2014, when spousal support payments ceased. We agree. Therefore, upon remand, the trial court must recalculate Mayberry's child support obligation for December 21, 2012 to October 21, 2014 with a deduction to Mayberry's gross income for spousal support paid. The child support obligation as currently calculated applies from October 21, 2014 onward. Accordingly, we sustain the fourth assignment of error in part and overrule it in part.

{¶ 46} By his sixth assignment of error, Mayberry argues that the trial court erred in designating him the child support obligor. We disagree.

{¶ 47} While normally we would review this argument under the abuse-of-discretion standard, Mayberry's failure to object to the magistrate's decision to name him obligor heightens our standard of review. If a party fails to file a timely, specific objection to a magistrate's decision, he waives the right to raise on appeal any error, other than plain error, as to the unobjected-to factual finding or legal conclusion. Civ.R. 53(D)(3)(b)(iv); *Triplett v. Warren Corr. Inst.*, 10th Dist. No. 12AP-728, 2013-Ohio-2743, ¶ 14. Courts will find plain error only in the extremely rare case where error "seriously

affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 48} Here, Mayberry's objections to the magistrate's decision did not include an objection regarding his status as obligor. Mayberry, consequently, waived any error as to that issue other than plain error. Mayberry's annual income of approximately $80,000 exceeds Duke's annual income of approximately $30,000. Given this disparity in income, we find no plain error in the trial court's decision to name Mayberry the child support obligor. *See Sexton v. Sexton*, 10th Dist. No. 07AP-396, 2007-Ohio-6539, ¶ 12 ("[D]esignating one parent, particularly the one who earns significantly more than the other, as obligor in a shared parenting situation is not an abuse of discretion."). Accordingly, we overrule Mayberry's sixth assignment of error.

{¶ 49} By his seventh assignment of error, Mayberry argues that the trial court erred in failing to lower his child support obligation given his increased parenting time. We disagree.

{¶ 50} The child support amount that results from the use of the basic child support schedule and applicable worksheet is presumed to be the correct amount of child support due. R.C. 3119.03. However, a court may deviate from the guideline amount of child support if, after consideration of the factors set forth in R.C. 3119.23, the court determines that the guideline amount "would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. The R.C. 3119.23 factors include:

> (A) Special and unusual needs of the children;
>
> (B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from a marriage or relationship that is the basis of the immediate child support determination;
>
> (C) Other court-ordered payments;
>
> (D) Extended parenting time or extraordinary costs associated with parenting time * * *;
>
> (E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;

(F)  The financial resources and earning ability of the child;

(G)  Disparity in income between parties or households;

(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;

(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(J)  Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(K) The relative financial resources, other assets and resources, and needs of each parent;

(L)  The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(M) The physical and emotional condition and needs of the child;

(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

(O) The responsibility of each parent for the support of others;

(P)  Any other relevant factor.

{¶ 51} Here, when the parties divorced, they agreed that Mayberry should receive a $200 downward deviation in child support because he would be exercising parenting time that exceeded the model visitation schedule in former Loc.R. 27 of the Franklin County Court of Common Pleas, Division of Domestic Relations.  The trial court accepted the parties' agreement and granted Mayberry the deviation.  Now, however, no agreement exists between the parties regarding deviation from the guideline child support obligation.  Moreover, the parties' circumstances have changed.  In determining whether the current circumstances justify a deviation, extended parenting time is only one of the many factors the trial court must consider.  *See Irish v. Irish*, 9th Dist. No. 09CA009577, 2010-Ohio-

403, ¶ 16 ("[N]otwithstanding a prior agreement that took into account extended parenting time, in determining whether to deviate from the presumptive guideline support, extended parenting time was only one of many factors that the trial court was required to consider in evaluating the parties['] current circumstances."). Consequently, the trial court's reliance on the extended-parenting-time factor to deviate previously does not necessarily entitle Mayberry to a deviation now.

{¶ 52} Under the modified parenting time schedule, Mayberry is caring for the children 50 percent of the time. Mayberry, therefore, is exercising extended parenting time. *See Havens v. Havens*, 10th Dist. No. 11AP-708, 2012-Ohio-2867, ¶ 30 (a parent who has more parenting time than that offered in the trial court's model parenting time schedule exercises extended parenting time pursuant to R.C. 3119.23(D)). This factor militates in favor of reducing Mayberry's child support obligation. However, the trial court found the extended-parenting-time factor outweighed by the parties' comparative financial situations. Mayberry earns approximately $50,000 more per year than Duke, and he lives in a two-income household where his second wife's income helps pay for household expenses.[3] The trial court found a "significant disparity" in the parties' respective incomes. Quoting from *Havens v. Havens*, 10th Dist. No. 12AP-1051, 2013-Ohio-3166, ¶ 16, the trial court stated:

> That disparity matters because the expenditures of an obligee parent with a significantly lower income do not decrease in direct relation to the out-of-pocket expenditures of the higher-income obligor parent. The obligee's fixed costs, such as housing and utilities, remain the same regardless of the extended time the children spend with the obligor. The higher-income obligor is better equipped to absorb the obligee's fixed costs. Keeping the child support at the guideline level ensures that the children enjoy a uniform standard of living while shifting between the obligee's and obligor's households.

(Feb. 18, 2015 Decision and Entry, at 8-9.)

{¶ 53} Mayberry contests the trial court's conclusion that he and his second wife "live a more comfortable existence" than Duke. (Feb. 18, 2015 Decision and Entry, at 7.) While the trial court based this conclusion on nothing more than the disparity in the

---

[3] Mayberry's second wife earns over $50,000 per year.

parties' household incomes, we cannot find the conclusion unreasonable, arbitrary, or unconscionable. More money generally enables a more comfortable lifestyle. Mayberry's debts and expenses may make his household an exception to the general rule, but Mayberry did not present sufficient evidence for the trial court or this court to reach that conclusion. *See Lopez-Ruiz v. Botta*, 10th Dist. No. 11AP-577, 2012-Ohio-718, ¶ 12 (the parent seeking a deviation from the guideline child support amount has the burden of proof).

{¶ 54} In the end, Mayberry cannot escape the fact that his household income significantly exceeds Duke's household income. Given this fact, we find no abuse of discretion in the trial court's decision not to deviate from the guideline child support amount. Accordingly, we overrule Mayberry's seventh assignment of error.

{¶ 55} For the foregoing reasons, we overrule Mayberry's first, second, third, fifth, sixth, and seventh assignments of error, and we sustain in part and overrule in part Mayberry's fourth assignment of error. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and we remand this matter to that court for proceedings consistent with law and this decision.

*Judgment affirmed in part, reversed in part;*
*cause remanded.*

DORRIAN, P.J., and BRUNNER, J., concur.